[No. 54558-2-I. Division One. August 22, 2005.]

*In the Matter of the Personal Restraint of* JOHN J. MARTIN, *Petitioner.*

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Robert M. McKenna, Attorney General*, and *Douglas W. Carr, Assistant*, for respondent.

¶1 KENNEDY, J. — After John J. Martin was convicted in 1994 of attempted robbery in the first degree and attempted murder in the second degree and sentenced to 300 months' confinement, the sentencing court ordered Martin to pay restitution "[o]n a schedule established by the defendant's Community Corrections Officer." In December 1994, an order was entered directing Martin to pay $3,848.31 to the Department of Labor and Industries, $1,996.15 to C.N.A. Insurance Company, and $1,000.00 to University Savings Bank. Because he was still incarcerated, Martin did not yet

have a community corrections officer. No payment schedule was set.

¶2 In April 2004, Martin remained incarcerated; accordingly, he had no community corrections officer. No payment schedule had ever been set. The Department of Corrections (DOC), for the first time, began seizing money from Martin's inmate accounts to pay for his legal financial obligations. Martin filed this personal restraint petition challenging the authority of DOC to seize money for this purpose. Martin asserted that because his restitution order required restitution to be paid "[o]n a schedule established by the defendant's Community Corrections Officer," the holding in *State v. Angulo*, 77 Wn. App. 657, 893 P.2d 662 (1995) required that collection be deferred until he was released.

¶3 But for intervening amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94 A RCW, that abrogate the application of *Angulo* to this case, we might have granted the petition. Under the amendments, however, DOC was permitted to start collecting restitution in 2004, even though Martin remained incarcerated, had no community corrections officer, and no payment schedule had ever been set. Martin had no vested rights to the contrary. Accordingly, we dismiss Martin's personal restraint petition.

## DISCUSSION

### A. Angulo *and RCW 9.94A.772*

¶4 Relying on *Angulo*, Martin asserts that he is unlawfully restrained within the meaning of RAP 16.4, based on DOC's premature enforcement of his 1994 restitution order, which he asserts is not collectible until he is released from incarceration. Angulo was given 92 months of confinement and ordered to pay a fine, court costs, and to pay restitution " '[o]n a schedule established by the defendant's Community Corrections Officer' " because " 'the defendant is capable of making payments on release from custody.' " *Angulo*, 77 Wn. App. at 659 (alteration in original). The

sentencing court was aware that Angulo had some $2,100 cash at the time of sentencing, but denied Angulo's motion to release those funds to him. Later, while Angulo remained in prison, the State moved to modify the judgment and sentence to release Angulo's funds to the State, so that the State could apply the monies toward Angulo's legal financial obligations.

¶5 The trial court granted that motion and this court reversed, holding (1) that there had been no change of circumstances since the time of sentencing—the sentencing court had been fully aware of the funds Angulo had available—and so the trial court lacked authority to modify the judgment and sentence to apply those monies to the obligations; (2) the restitution statute allowed enforcement by a party or entity to which a legal financial obligation was owed, and at the time of the State's motion it was not such a party—because the crime victims had statutory priority over the State in terms of right of collection from the only funds that were available to Angulo; and (3) under the judgment and sentence the obligation to pay was deferred until a schedule was set by the Community Corrections Officer, who would not be appointed until Angulo was released from confinement. In sum, *Angulo* held that, without modification, nothing would be owed under the restitution order until Angulo was released from confinement. *Angulo*, 77 Wn. App. at 660-62.

¶6 DOC argues, notwithstanding *Angulo*, it is authorized to collect Martin's court-ordered legal financial obligations under RCW 9.94A.772. Setting and enforcing restitution obligations requires statutory authority, and court action without such authority is void. *Angulo*, 77 Wn. App. at 660. The standard of review of the enforcement of restitution orders is de novo. *Id.*

¶7 The primary purpose of statutory construction is to give effect to the legislature's intent. *City of Bellevue v. E. Bellevue Cmty. Council*, 138 Wn.2d 937, 944, 983 P.2d 602 (1999). Legislative intent is determined primarily from the language of the statute itself. *E. Bellevue*, 138 Wn.2d at

944. If a statute's language is clear, "its plain meaning must be given effect without resort to rules of statutory construction." *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984). A statute is ambiguous when it is susceptible to more than one interpretation. *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992).

¶8 RCW 9.94A.772 is titled "Legal financial obligations—Monthly payment, starting dates—Construction," and provides in relevant part:

> Notwithstanding any other provision of state law, monthly payment or starting dates set by the court, the county clerk, or the department before or after October 1, 2003, shall not be construed as a limitation on the due date or amount of legal financial obligations, which may be immediately collected by civil means . . . .

RCW 9.94A.772 (2004 ch. 121 § 4, effective June 10, 2004; 2003 ch. 379 § 22, effective Oct. 1, 2003).

¶9 The statute is not ambiguous. Its clear language provides that monthly payment or starting dates contained in a court order "shall not be construed as a limitation on the due date" for purposes of collecting legal financial obligations by civil means. Although perhaps not enacted directly in response to *Angulo*, RCW 9.94A.772 changes the Sentencing Reform Act to specifically allow for collection of legal financial obligations during incarceration despite language in a defendant's judgment and sentence that would direct otherwise. Thus, we conclude that *Angulo* is specifically abrogated by the due-date provisions set forth in RCW 9.94A.772.

¶10 Nevertheless, Martin asserts that the statute's plain language says that legal financial obligations can be collected only by "civil means." Martin argues that "civil means" include only such means as the right to collect through a writ of garnishment. Martin reads RCW 9.94A.760 and related portions of the SRA too narrowly. RCW 9.94A.772 was not enacted in a vacuum. Rather, it was enacted with several other legislative provisions in-

volving collection of legal financial obligations including restitution (RCW 9.94A.637, .750, .753, .760, .772, .780, .925); DOC statutes regarding the collection of inmate funds for the payment of legal financial obligations (RCW 72-.09.111); statutes regarding payment of industrial insurance compensation claims to inmates (RCW 51.32.040); civil procedure statutes addressing satisfaction of judgments (RCW 4.56.100); and statutes relating to county clerks' reporting of legal financial obligations (RCW 36.23.110; RCW 2.56.190). *See* LAWS OF 2003 ch. 379 §§ 13-27. The means provided to DOC for collection of legal financial obligations are not criminal means; they are a species of civil means.

¶11 The legislature stated its intent in adopting these provisions

> The legislature intends to revise and improve the processes for billing and collecting legal financial obligations. The purpose of sections 13 through 27 of this act [chapter 379, Laws of 2003] is to respond to suggestions and requests made by county government officials, and in particular county clerks, to assume the collection of such obligations in cooperation and coordination with the *department of corrections* and the administrative office for [of] the courts. The legislature undertakes this effort following a collaboration between local officials, the *department of corrections,* and the administrative office for [of] the courts. The intent of sections 13 through 27 of this act [chapter 379, Laws of 2003] is to promote an increased and more efficient collection of legal financial obligations and, as a result, *improve the likelihood that the affected agencies will increase the collections which will provide additional benefits to all parties and, in particular, crime victims whose restitution is dependent upon the collections.*

LAWS OF 2003 ch. 379 §13 (emphasis added). Thus, it was anticipated that the DOC would be an entity that could be collecting legal financial obligations under the new and altered statutes.

¶12 Further, the statutes at issue here all relate to the same subject matter and should be viewed as complemen-

tary, instead of in conflict with each other. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). RCW 9.94A.760 does not, as Martin asserts, limit collection of legal financial obligations solely to victims. The statute describes the collection of such obligations generally and allows enforcement "in the same manner as a judgment in a civil action by the party or entity to whom the legal financial obligation is owed." RCW 9.94A.760(4). However, the statute also specifies that if a court fails to set an offender's monthly payment for restitution, the DOC "shall set the amount if the department has active supervision of the offender, otherwise the county clerk shall set the amount." RCW 9.94A.760(1).

¶13 Finally, the SRA, currently and as it existed at the time Martin was incarcerated, authorizes the State or victim to "enforce the court-ordered restitution in the same manner as a judgment in a civil action." Former RCW 9.94A.142(6) (1994) (chapter 9.94A RCW, Sentencing Reform Act of 1981), *recodified as* RCW 9.94A.753(9) by LAWS OF 2001, ch. 10, § 6. We hold that when RCW 9.94A.772 is read in context of the entire SRA and the changes made in 2003, the meaning of the term "collection by civil means" in the statute includes enforcement and collection of legal financial obligations by either the victim, the DOC when it has custody of the offender, the State, or the court clerk.

### B. *Rule of Lenity*

¶14 Martin next argues that if RCW 9.94A.772 applies to the DOC, its provisions are either ambiguous or are in conflict with the provisions of RCW 9.94A.750 and RCW 9.94A.760 such that the rule of lenity must be applied in his favor. The rule of lenity operates to resolve statutory ambiguities, absent legislative intent to the contrary, in favor of a criminal defendant. *In re Pers. Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994); *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991). As discussed above, the meaning of RCW 9.94A.772, when read in context of other provisions of the SRA, is not ambiguous. RCW 9.94A.750, RCW 9.94A-

.760, and RCW 9.94A.772 are also not in conflict, as indicated by the intent of the legislature in enacting changes to the SRA in 2003. Thus the rule of lenity need not be applied in the present case.

## C. *Modification of Judgment and Sentence*

 ¶15 Martin also argues that a trial court, in setting his sentence, is required by the SRA to impose a sentence that " 'states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, of community supervision, the number of actual hours or days of community service work, or dollars or terms of a fine or restitution.' " *State v. Shove*, 113 Wn.2d 83, 86, 776 P.2d 132 (1989) (quoting former RCW 9.94A.030(12) (1989)). Martin asserts that DOC's actions pursuant to RCW 9.94A.772 are in direct violation of his judgment and sentence deferring payment of the legal financial obligations and thus constitute an improper modification of the court's judgment and sentence. Martin argues the SRA allows modification of the payment schedule set by the court for restitution only if the offender's circumstances have changed and that DOC must request the modification. RCW 9.94A.750(2), .760(7)(a). However, Martin assumes that *Angulo* remains in effect despite the clear language of RCW 9.94A.772, and that his sentence and judgment was thus deferred until his release. *Angulo* has been specifically abrogated by RCW 9.94A.772. Sentencing forms that previously may have been interpreted under *Angulo* to permit collection of legal financial obligations only upon an offender's release from incarceration no longer operate as a limitation upon such collection. Because Martin's judgment and sentence and restitution order are not limited by a requirement deferring collection of restitution until after he is released from incarceration, DOC is not modifying the judgment.

██ ¶16 Rather, no specific due date has been set by the judgment and sentence. And, because no specific due date is set forth in the judgment, RCW 9.94A.760(1) specifically

allows DOC to set a payment date for the legal financial obligations. DOC, as the custodian of inmate accounts, is further authorized to disburse money from such accounts "for the purposes of satisfying a court-ordered legal financial obligation to the court . . . as stated in RCW 72-.09.111(1) . . . ." RCW 72.11.020. Under RCW 72.09.111, DOC has the authority to deduct from inmate accounts 20 percent for payment of legal financial obligations.

D. *Retroactive Application of RCW 9.94A.772*

¶17 Statutory amendments are presumed to be prospective in application. The presumption of prospective application can be overcome only by showing (1) the legislature intended the amendment to apply retroactively, (2) the amendment is curative, or (3) the amendment is remedial. *State v. Smith*, 144 Wn.2d 665, 673, 30 P.3d 1245, 39 P.3d 294 (2001). Here, it is clear by the language of RCW 9.94A.772 that the legislature intended the statute to be remedial. It applies, by its own terms, to starting dates of legal financial obligations "set by the court, the county clerk, or the department before or after October 1, 2003 . . . ." Further, in enacting this and other statutes, the legislature stated it "intends to revise and improve the processes for billing and collecting legal financial obligations" and to "improve the likelihood that the affected agencies will increase the collections which will provide additional benefits to all parties and, in particular, crime victims whose restitution is dependent upon the collections." LAWS OF 2003 ch. 379 § 13. Thus, the statute is also remedial in nature.

¶18 Nevertheless, Martin argues that retroactive application of RCW 9.94A.772, which was enacted in 2003, would deprive him of a vested right to delay paying his legal financial obligations until after he is released, thus depriving him of due process. A statute is presumed to be constitutional, and the party attacking a statute "has the burden of proving it unconstitutional beyond a reasonable doubt." *State v. Hennings*, 129 Wn.2d 512, 524, 919 P.2d 580

(1996). A retroactive statute is unconstitutional when it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . .' " *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 321, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)).

¶19 Martin cites *St. Cyr*, 533 U.S. 289, and *State v. T.K.*, 139 Wn.2d 320, 987 P.2d 63 (1999), to support his argument that RCW 9.94A.772 deprives him of a vested right. Neither case is applicable here.[1] *State v. Shultz*, 138 Wn.2d 638, 980 P.2d 1265 (1999) is analogous. In *Shultz*, the defendant was ordered to pay restitution for 16 counts of arson. The relevant statute specified that the sentencing court's jurisdiction over a restitution order expired 10 years after imposition of the sentence. *Shultz*, 138 Wn.2d at 641 (citing RCW 9.94A.142 (Laws of 1985, ch. 443, § 10)). The statute was changed after the defendant's sentence to allow calculation of a 10-year window for enforcement, from the time of an offender's release from incarceration. *Shultz*, 138 Wn.2d at 641. The defendant argued this deprived him of a vested right to pay his restitution only for the period allowed by law when he was sentenced. Noting that the restitution order was a legally imposed financial obligation, the Washington Supreme Court concluded that the defendant's mere expectation of that legal obligation expiring at any particular time was not a vested right. *Shultz*, 138 Wn.2d at 647.

¶20 Similarly, Martin cannot show reliance here. As pointed out by the DOC, at the time of Martin's sentencing, the SRA allowed disbursements from Martin's inmate account to pay for legal financial obligations. RCW 72.11.020.

---

[1] *St. Cyr*, 533 U.S. at 324-25 (retroactive application of an amended statute to resident aliens, which would eliminate their right to seek a discretionary waiver of deportation under prior law on which they relied when pleading guilty to felony charges, would deprive them of a vested right); *T.K.*, 139 Wn.2d at 333-34 (defendant's reliance on his statutory right to expunge his record vested prior to amendment of the statute, and thus retroactive application of the statute would deprive him of his vested right).

¶21 In sum, Martin has not stated grounds upon which relief can be granted by way of a personal restraint petition. Therefore, the personal restraint petition is dismissed under RAP 16.11(b).

COLEMAN and BECKER, JJ., concur.