[No. 78715-8. En Banc.]
Argued November 28, 2006. Decided March 22, 2007.

JOHN PHILLIP ANDERSON ET AL., *Appellants*, v. THE DEPARTMENT OF CORRECTIONS ET AL., *Respondents*.

*Helen A. Anderson,* for appellants.

*Robert M. McKenna, Attorney General*, and *Mary (Kate) McLachlan* and *Sara J. Olson, Assistants*, for respondents.

¶1 BRIDGE, J. — Appellants John Anderson and Frank Nordlund are inmates at the Clallam Bay Corrections Center. Both were sentenced to life without the possibility of parole or release (LWOP). In recent years, each has received income from nonwork-related outside sources, including funds sent to them by family members. The Department of Corrections (Department) deducted 20 percent of those deposits for application toward Anderson's and Nordlund's court-ordered legal financial obligations (LFOs). They argue that these deductions violated RCW 72.09.480(7), which sets forth specific deductions to be taken from nonwork-related inmate income where the inmate has been sentenced to LWOP or death, but does not include an LFO deduction. Even so, a separate statute, RCW 72.11.020, grants the secretary of the Department the authority to take deductions from inmate accounts for payment toward LFOs, as long as the deduction does not reduce the account below the established level of indigency. RCW 72.11.020 also mandates that court-ordered LFOs shall be paid, while RCW 72.11.030 provides that court-ordered LFOs shall take priority over any other statutorily imposed mandatory withdrawals.

¶2 We conclude that while RCW 72.09.480(7) does not *mandate* a specific deduction to be paid toward LFOs, RCW 72.11.020 grants the secretary the *authority* to impose LFO deductions in his or her discretion, as long as the account balance remains above the level of indigency. To conclude otherwise would allow the LFOs of nonworking LWOP inmates to go unpaid, a result that conflicts with the clear intent of the legislature. Given our long established obliga-

tion to reconcile statutes wherever possible, we decline to read RCW 72.09.480(7) to supersede RCW 72.11.020 and .030. We hold that RCW 72.11.020 allows the secretary of the Department to collect LFO deductions from nonwork-related inmate income, even though RCW 72.09.480(7) does not mandate that a particular amount be deducted to satisfy an LFO.

I

Facts and Procedural History

¶3 A court-ordered LFO is an obligation imposed by the superior court, usually at the time of sentencing, which can include victim restitution, crime victims' compensation fees, court costs, court appointed attorney fees and costs, fines, payment to a county or interlocal drug fund, or any other LFO assessed as a result of the felony conviction. RCW 72.11.010(1); RCW 9.94A.760. The trial court records an LFO on a defendant's judgment and sentence or on a subsequent order to pay. RCW 9.94A.760.

¶4 RCW 72.11.020 provides that the secretary of the Department shall have the authority to disburse money from an inmate's personal account for the purpose of satisfying a court-ordered LFO, but such withdrawals cannot reduce the inmate's account below the level of indigency. RCW 72.11.020 also mandates that all LFOs shall be paid. Then RCW 72.11.030(1) explains that unless otherwise noted in that chapter, LFO deductions shall take priority over any other statutorily mandated deductions.

¶5 RCW 72.09.480(7) provides a list of mandatory deductions when an inmate who has been sentenced to LWOP or to death receives nonwork-related income.[1] Subsection (7) includes deductions for the public safety and education account for purposes of victim compensation, for the cost of

---

[1] RCW 72.09.480(7) does not apply to settlements or awards resulting from legal action.

incarceration, and for child support payments, but it does not mention LFOs. RCW 72.09.480(7).

¶6 From 1992 to 1995, the Department made LFO deductions from an inmate account when the amount in the account exceeded $250. From 1995 to 2003, LFO deductions taken as funds were deposited into inmate accounts. In 2003, the Department updated its policies and specified that a 20 percent deduction would be taken from nonwork-related income deposited into an inmate's account, to be applied toward the inmate's LFOs. Such deductions were made without regard to the duration of the inmate's sentence. In May 2004, the Department delayed implementation of such LFO deductions in order to "conduct a review of the statutory obligations of deductions and to provide proper notice" of the change. Clerk's Papers (CP) at 84 (emphasis omitted). Then, in September 2004, the Department again began to make LFO deductions from nonwork-related income, regardless of the inmate's sentence. The record suggests that the Department believed the LFO deduction from nonwork-related income was mandatory for all inmates.

¶7 Accordingly, the Department applied the 20 percent LFO deduction to funds Anderson and Nordlund received from outside sources. Anderson, Nordlund, and other LWOP inmates filed grievances in objection to the LFO deductions, arguing that such deductions could not be applied to them under RCW 72.09.480(7). In response to one of Nordlund's grievances, a Department trust account specialist agreed with the inmates. However, when Department headquarters consulted with the attorney general's office, they concluded that RCW 72.11.020 gave the secretary authority to take LFO deductions from inmate accounts, even where the inmate was not subject to release. In response to the grievances, the Department relied on RCW 72.11.020 to justify its LFO deductions.

¶8 In May 2005, Anderson and Nordlund filed a writ of review pursuant to RCW 7.16.040 in Clallam County Superior Court, claiming that LFO deductions had been

improperly taken from their accounts.[2] Specifically, they asked the superior court to issue the writ; to declare the Department's deductions from their accounts to be illegal, arbitrary, and capricious; and to permanently enjoin the Department from taking such LFO deductions in the future. They also demanded that the Department refund the improper deductions, and they requested punitive damages, attorney fees, and costs.

¶9 Shortly thereafter, the secretary of the Department sent a letter to all offenders, clarifying the Department's position on LFO deductions. He explained:

> The Legislature has clearly and consistently expressed its intent that all inmates pay the legal financial obligations they owe when they have the means to do so, and I do not believe the Legislature intended to exempt LWOP and death penalty offenders from these obligations. RCW 72.11.020 grants the Secretary of the Department of Corrections the authority to make deductions from offenders' accounts to pay their legal financial obligations, so long as these deductions do not take an offender's account below the $10 indigency level.

> Pursuant to the authority granted me by RCW 72.11.020, I now endorse and reaffirm the Department's current policy (DOC 200.000) of making a 20% deduction for legal financial obligations from all incoming nonexempt funds received by all offenders who have outstanding legal financial obligations, including LWOP and death penalty inmates.

CP at 104. The trial court agreed with the Department, declined to order the Department to change its LFO deduction policy, and dismissed the action.

¶10 Anderson and Nordlund filed a notice of appeal and both parties submitted briefing to Division Two of the Court

---

[2] RCW 7.16.040 allows a superior court to grant a writ of review where an inferior officer, exercising judicial functions, has exceeded his or her jurisdiction and there is no appeal, nor any plain, speedy, and adequate remedy at law. *See Chaussee v. Snohomish County Council*, 38 Wn. App. 630, 634-35, 689 P.2d 1084 (1984). In the alternative, Anderson and Nordlund requested that the superior court exercise its inherent power to review the Department's policy on LFO deductions pursuant to article IV, section 6 of the state constitution. *See Bridle Trails Cmty. Club v. City of Bellevue*, 45 Wn. App. 248, 251-52, 724 P.2d 1110 (1986).

of Appeals, with the appellants acting pro se. On its own motion, the Court of Appeals certified the case to this court. We accepted certification. Anderson and Nordlund then agreed to be represented by counsel from the University of Washington School of Law.

## II

## Analysis

¶11 Given the complicated statutory scheme at issue here, we begin with a discussion of the relevant statutes and their history. Chapter 72.11 RCW deals with payment of offenders' LFOs. This case involves funds that inmates receive from nonwork-related sources, including funds sent to inmates by friends and family.[3] Mandatory deductions from those sources are governed by RCW 72.09.480.

¶12 These statutes were enacted and amended over the course of about 15 years between 1989 and 2003. In 1989, the legislature enacted chapter 72.11 RCW, entitled "Offenders—Responsibility for Legal Financial Obligations." LAWS OF 1989, ch. 252. The purpose of the legislation was to

create a system that: (1) Assists the courts in sentencing felony offenders regarding the offenders' legal financial obligations; (2) holds offenders accountable to victims, counties, cities, the state, municipalities, and society for the assessed costs associated with their crimes; and (3) provides remedies for an individual or other entities to recoup or at least defray a portion of the loss associated with the costs of felonious behavior.

*Id.* § 1. RCW 72.11.020 provides that the secretary of the Department "shall be custodian of all funds of a convicted person . . . that are sent or brought to the person, or earned by the person while in custody, or that are forwarded to the superintendent on behalf of a convicted person." All inmate

---

[3] An inmate can also earn money from various forms of work while incarcerated or on work release, and mandatory minimum deductions from work-related sources are governed by RCW 72.09.111 (prison work) and RCW 72.65.050 (work release).

funds must be deposited in the inmate's personal account within the institutional resident deposit account. RCW 72-.11.020 further provides:

> [*T*]*he secretary shall have authority to disburse money from such person's personal account for the purposes of satisfying a court-ordered legal financial obligation to the court.* Legal financial obligation deductions shall be made as stated in RCW 72.09.111(1) and 72.65.050 [governing work-related income] without exception. Unless specifically granted authority herein, at no time shall the withdrawal of funds for the payment of a legal financial obligation result in reducing the inmate's account to an amount less than the defined level of indigency to be determined by the department.
>
> Further, unless specifically altered herein, court-ordered legal financial obligations shall be paid.

(Emphasis added.)[4] RCW 72.11.030(1) then provides:

> Except as otherwise provided herein, all court-ordered legal financial obligations shall take priority over any other statutorily imposed mandatory withdrawals from inmate's accounts.

RCW 72.11.030(2) and (3) then list certain work release and vocational training expenses, which can take priority over LFO deductions.

¶13 RCW 72.09.480, dealing with deductions from inmate income from nonwork-related sources, was first enacted in 1995, but it has undergone a number of amendments since. When first enacted, RCW 72.09.480 incorporated a scheme of deductions from the statute dealing with work-related income, RCW 72.09.111(1)(a), without distinction between inmates subject to release and those not subject to release. LAWS OF 1995, 1st Sp. Sess., ch. 19, § 8. That scheme required LFO deductions, but instead of setting forth a specific amount, it charged the secretary with developing a formula. Former RCW 72.09.111(1) (1994).

---

[4] RCW 72.11.020 was amended only once, when the legislature in 2002 added a sentence recognizing the mandatory character of deductions to be made from work-related income under RCW 72.09.111 and RCW 72.65.050. LAWS OF 2002, ch. 126, § 1.

¶14 In 1999, the legislature amended RCW 72.09.480 to create two separate subsections, one dealing with deductions for inmates subject to release and one dealing with deductions for inmates not subject to release. LAWS OF 1999, ch. 325, § 1(2), (6). Then in 2002, the legislature added mandatory minimum LFO deductions to RCW 72.09-.111(1)(a), requiring a minimum 20 percent LFO deduction from inmate wages. LAWS OF 2002, ch. 126, § 2. Because RCW 72.09.480(2) incorporated 72.09.111(1)(a) by reference, as a result of the 2002 legislation, the minimum 20 percent LFO deduction became mandatory for nonwork-related income of inmates subject to release. Former RCW 72.09.480(2) (2002). In contrast, RCW 72.09.480(6), which applied to inmates *not* subject to release, did not incorporate RCW 72.09.111(1)(a) and was therefore not impacted by the addition of the minimum 20 percent LFO deduction. Former RCW 72.09.480(6) (2002).

¶15 In 2003, the legislature added to most categories of inmate income a 15 percent deduction to fulfill child support orders. LAWS OF 2003, ch. 271, §§ 2, 3. In the same act, the legislature amended RCW 72.09.480(2), eliminating the reference to RCW 72.09.111(1)(a) and adding an explicit list of mandatory deductions that included a 20 percent deduction for LFOs for inmates subject to release. LAWS OF 2003, ch. 271, § 3(2). The legislature also added a child support deduction to the list of mandatory deductions imposed in subsection (7), now the subsection dealing with inmates *not* subject to release, but the legislature did not add any LFO deduction for those inmates. *Id.* § 3(7).

¶16 RCW 72.09.480(2) now provides:

When an inmate, *except as provided in subsection (7) of this section,* receives any funds in addition to his or her wages or gratuities, except settlements or awards resulting from legal action, the additional funds *shall be subject to* the following deductions and the priorities established in chapter 72.11 RCW:

(a) Five percent to the public safety and education account for the purpose of crime victims' compensation;

(b) Ten percent to a department personal inmate savings account;

(c) Twenty percent to the department to contribute to the cost of incarceration;

(d) *Twenty percent for payment of legal financial obligations* for all inmates who have legal financial obligations owing in any Washington state superior court; and

(e) Fifteen percent for any child support owed under a support order.

(Emphasis added.) In contrast, RCW 72.09.480(7) provides:

When an inmate sentenced to life imprisonment without possibility of release or parole, or to death under chapter 10.95 RCW, receives any funds in addition to his or her gratuities, except settlements or awards resulting from legal action, the additional funds *shall be subject to*: Deductions of five percent to the public safety and education account for the purpose of crime victims' compensation, twenty percent to the department to contribute to the cost of incarceration, and fifteen percent to child support payments.

(Emphasis added.)[5]

 ¶17 We must determine whether the absence of an LFO deduction in RCW 72.09.480(7) supersedes the authority granted to the secretary in RCW 72.11.020 to take LFO deductions from all inmate personal accounts. Interpretation of a statutory scheme is a question of law subject to de novo review. *State v. J.P.*, 149 Wn.2d 444, 449, 69 P.3d 318 (2003). Our purpose is to "discern and implement the intent of the legislature." *Id.* at 450. We consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent. *Id.*; *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89-90, 124 P.3d 294 (2005). We do

---

[5] Similarly, when an inmate subject to release receives funds as a result of legal action, those funds "shall be subject to" the deductions listed in RCW 72.09-.111(1)(a) for public safety and education, personal savings account, cost of incarceration, and LFOs. RCW 72.09.480(3). But when an inmate not subject to release receives funds from a legal action, those funds "shall be subject to" deductions for public safety and education and the cost of incarceration. RCW 72.09.480(8).

not favor repeal by implication, and where potentially conflicting acts can be harmonized, we construe each to maintain the integrity of the other. *E.g., Misterek v. Wash. Mineral Prods., Inc.*, 85 Wn.2d 166, 168, 531 P.2d 805 (1975).[6]

¶18 Anderson and Nordlund assert that the language of RCW 72.09.480(7) unambiguously omits LFO deductions from the list of deductions to be made from nonwork-related income received by inmates not subject to release. Citing to the rule of expressio unius est exclusio alterius, or to include one thing implies the exclusion of another, they argue that the legislature intended to prohibit the secretary from making such LFO deductions. Appellants' Suppl. Br. at 6; *e.g., State v. Delgado*, 148 Wn.2d 723, 728-29, 63 P.3d 792 (2003); *Starr v. Employment Sec. Dep't*, 130 Wn. App. 541, 549, 123 P.3d 513 (2005). They also rely on the fact that the legislature clearly *included* an LFO deduction in the list of mandatory deductions from nonwork-related income received by inmates who *are* subject to release. RCW 72.09.480(2). However, this reading fails to take into account the plain language of RCW 72.11.020 and .030, which unquestionably grants the Department the authority to take LFO deductions and, in fact, give LFO deductions top priority.

¶19 In addition, Anderson and Nordlund compare RCW 72.09.480(7) with RCW 72.09.111(1). RCW 72.09.111(1) expressly charges the Department with establishing a formula for deductions from work-related income, but lists "minimum deductions," which include a 20 percent deduction for LFOs from several categories of inmate work income. *See* RCW 72.09.111(1)(a), (b), (c). Anderson and Nordlund argue that the reference to *minimum* deductions

---

[6] In cases where the question is whether one statute has been impliedly repealed or overruled by another related statute, this court has explained the legislative history of the statutory scheme and applied the relevant rules of construction without first engaging in a plain language analysis. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146-47, 18 P.3d 540 (2001); *Gilbert v. Sacred Heart Med. Ctr.*, 127 Wn.2d 370, 373-75, 900 P.2d 552 (1995); *Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 242-43, 676 P.2d 1002 (1984).

indicates that the lists contained in RCW 72.09.111(1) are nonexclusive, but the absence of the word "minimum" in RCW 72.09.480(7) means the deductions listed there must be exclusive. In other words, they assert, had the legislature intended for the secretary to be able to take deductions over and above the list set forth in RCW 72.09.480(7), the deductions in that subsection would have also been characterized as "minimum" deductions.

¶20 However, we find it more significant that RCW 72.09.111(2) *explicitly* exempts inmates not subject to release from deductions to be applied toward inmate personal savings accounts. Had the legislature intended to exempt inmates not subject to release from LFO deductions entirely, it could have explicitly done so using language similar to that in RCW 72.09.111(2). While the legislature specifically exempted LWOP and death row inmates from personal savings account deductions, no exemption from LFOs is specified anywhere in RCW 72.09.480. In fact, chapter 72.11 RCW establishes just the opposite—that all LFOs must be paid and that LFO payments take priority over all other statutorily mandated deductions. RCW 72.11.020, .030.

¶21 The appellants also argue that the legislature has gradually moved toward more specific regulation of deductions from inmate income. Anderson and Nordlund contend that because RCW 72.09.480 is both more specific, in that it applies to deductions from nonwork-related income, and more recently enacted, its language alone should control this question. *See J.P.*, 149 Wn.2d at 452; *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 37, 785 P.2d 447 (1990) (holding that provisions of a more specific, more recent statute prevail in a conflict with a more general predecessor). Similarly, the dissent contends that RCW 72.09.480 is more specific and therefore should supersede chapter 72.11 RCW. Dissent at 866. Therefore, the appellants and the dissent assert that the Department cannot rely on the older and more general authority granted in chapter 72.11 RCW to impose LFO deductions upon nonwork-related income of inmates not subject to release.

¶22 However, where statutes relate to the same subject matter, we must read them as a unified whole to the end that a harmonious statutory scheme evolves which maintains the integrity of the respective statutes. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001); *see also Misterek*, 85 Wn.2d at 168; *In re Pers. Restraint of Martin*, 129 Wn. App. 135, 141-42, 118 P.3d 387 (2005). We apply the rule of construction on which the dissent and the appellants rely *only* where two statutes "irreconcilably conflict." *Hallauer*, 143 Wn.2d at 146. "[I]t is the duty of this court to construe two statutes dealing with the same subject matter so that the integrity of both will be maintained." *Gilbert v. Sacred Heart Med. Ctr.*, 127 Wn.2d 370, 375, 900 P.2d 552 (1995). "When two statutes apparently conflict, the rules of statutory construction direct the court to, if possible, reconcile them so as to give effect to each provision." *State v. Landrum*, 66 Wn. App. 791, 796, 832 P.2d 1359 (1992).

¶23 LFO deductions are not on the list of *mandatory* deductions from nonwork-related income where the inmate is not subject to release. RCW 72.09.480(7). But the argument that such deductions are prohibited relies on the idea that RCW 72.09.480(7) deprives the secretary of *authority* to apply such deductions in his or her discretion. *See* dissent at 865, 867. In contrast, RCW 72.11.020 unambiguously grants the secretary authority to "disburse money from [an inmate's] personal account for the purposes of satisfying a court-ordered legal financial obligation," so long as the disbursal does not reduce the inmate's balance below the level of indigency. RCW 72.11.020. Moreover, RCW 72.11.030(1) mandates that LFO deductions shall take priority over any other statutorily mandated deduction, with very limited work release exceptions not at issue here. Simply put, the dissent's interpretation of RCW 72.09-.480(7) directly conflicts with chapter 72.11 RCW. Dissent at 866. Yet, according to our rules of construction, if there is an interpretation of the deduction scheme that gives effect

to both RCW 72.09.480(7) and chapter 72.11 RCW, we are obligated to reconcile the two.[7]

¶24 In contrast, the State offers a reading that gives effect to both chapter 72.11 RCW and RCW 72.09.480. RCW 72.11.020 gives the secretary *authority* to make LFO deductions from inmate accounts while RCW 72.09.480(7) sets forth a list of *mandatory* deductions. Of course, the legislature could have included LFOs in the list of mandatory deductions contained in RCW 72.09.480(7), but its failure to do so indicates only that the legislature did not mandate an LFO deduction of a particular amount for inmates not subject to release.[8] Nothing in the language of RCW 72.09.480(7) explicitly states that the list of deductions contained therein is exclusive. And the legislature never took steps to explicitly limit the authority granted the secretary in chapter 72.11 RCW or to supersede or repeal RCW 72.11.020 or .030. Significantly, the legislature has never wavered from its position that court-ordered LFOs must be paid, amending RCW 72.11.020 only in 2002, and then without deleting the broad grant of authority to the

---

[7] The dissent seizes on an argument set forth in Anderson's and Nordlund's pro se briefings. They argue that RCW 72.09.480(2) reads, in part, "except as provided in subsection (7) . . . any funds [received] in addition to his or her wages or gratuities . . . shall be subject to . . . the priorities established in chapter 72.11 RCW." RCW 72.09.480(2). They interpret this language to explicitly exempt inmates not subject to release from chapter 72.11 RCW altogether. *See* Appellants' Opening Br. at 15. Yet even if we were to agree as to the extent of the subsection (7) exception, the language exempts only those inmates from the *priorities* set forth in chapter 72.11 RCW. It would not explicitly exempt them from the secretary's *authority* to impose LFO deductions.

[8] The dissent fails to distinguish between a legislative mandate that some LFO deductions are required and a legislative grant of authority to the Department to take LFO deductions from inmate personal accounts in its discretion. For example, the dissent implies that RCW 72.11.020's reference to mandatory deductions from work-related income somehow negates the Department's authority to take LFO deductions from any other source. But in the preceding sentence, the legislature unambiguously grants the Department authority to disburse money from inmate personal accounts for purposes of satisfying LFOs, and RCW 72.11.030 gives LFO deductions priority over all other statutorily mandated deductions. Again with regard to RCW 72.09.480(7), the dissent reads the legislature's failure to mandate a particular deduction as the denial of authority. But, as explained above, nothing in RCW 72.09.480(7) explicitly denies the Department authority to take the LFO deductions at issue here, RCW 72.11.020 and .030 separately grant the Department authority to take such deductions, and wherever possible, we must read these statutes as a unified whole.

secretary to make deductions for LFOs. LAWS OF 2002, ch. 126, § 1. We cannot assume the legislature, by adopting RCW 72.09.480(7), intended to impliedly repeal chapter 72.11 RCW unless the two acts clearly cannot be reconciled, a fact the dissent simply ignores. *See Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 242, 676 P.2d 1002 (1984). On the other hand, we can fulfill the reconciliation requirement if we read RCW 72.09.480(7) to declare a list of mandatory deductions, while chapter 72.11 RCW allows additional deductions at the discretion of the secretary.

¶25 Anderson and Nordlund contend that their reading of the statutes is the only one that fulfills the purpose of LFO deductions. They assert that the purpose of imposing LFO deductions is similar to the purpose of the mandatory inmate savings, namely, to force an inmate to reduce his or her debt prior to his or her release. *See, e.g.*, Mem. from Pam Daniels, Snohomish County Clerk, to Senator Costa (on file with Wash. State Archives, Substitute S.B. 6402, 57th Leg., Reg. Sess. (Wash. 2002)). Anderson and Nordlund reason that because they will never be released, the legislature found it unnecessary for them to reduce their LFO debt. Appellants' Opening Br. at 6.

¶26 However, the purpose of RCW 72.11.020, which grants authority to the secretary to disburse inmate funds to pay LFOs, was in large part to assure that LFOs would be paid so that victims and local governments could be compensated for the costs associated with felonious behavior. *See* LAWS OF 1989, ch. 252, § 1. Anderson and Nordlund's argument relies on purported benefits for inmates without accounting for obvious benefits for victims and local governments. They also argue that their income from outside sources will be nominal and thus will not operate as a realistic source for paying off LFO debt. Appellants' Opening Br. at 6-7. While the amount collected from inmates not subject to release may be nominal in many cases, the legislature has sent a clear message that court-ordered LFOs shall be paid. RCW 72.11.020. It is hard to deny that small payments are better than nothing at all, even where full payment is the ultimate goal.

¶27 When confronted with RCW 72.11.020's mandate that all LFOs be paid, Anderson and Nordlund point to the fact that LFO payments will be made by some LWOP inmates from their work-related income pursuant to RCW 72.09.111. But RCW 72.09.111 does not limit the Department's authority to satisfy LFOs only from work-related income. More importantly, they ignore the fact that not all inmates, and of course not all LWOP inmates, have jobs. For example, in 1999, approximately 30 percent of all inmates did not have jobs or other means of earning money while in prison. H.B. REP. on H.B. 1143, 56th Leg., Reg. Sess., at 3 (Wash. 1999) (summarizing testimony against). Thus, for at least some LWOP inmates, the only sources of income, and therefore the only sources of LFO payment, are nonwork related. If the secretary is prohibited from making deductions to pay nonworking inmates' LFOs out of funds received from outside sources, then their LFOs could go entirely unpaid. This result squarely contradicts the legislature's stated purpose to assure payment of all LFOs, again, a fact the dissent ignores. RCW 72.11.020. In contrast, the State's reading of the statutory scheme advances the express purpose of LFO deductions and avoids this absurd result. LAWS OF 1989, ch. 252 § 1; *see also Davis v. Dep't of Licensing*, 137 Wn.2d 957, 971, 977 P.2d 554 (1999) (when interpreting statutes, we should avoid absurd results or strained consequences).

¶28 In sum, we conclude that our obligation to reconcile potentially conflicting statutes requires us to read chapter 72.11 RCW to grant the secretary of the Department authority to make deductions from inmate accounts to pay LFOs, even if RCW 72.09.480(7) does not make such deductions mandatory for inmates not subject to release. The secretary acted within the authority granted him by RCW 72.11.020 when he authorized LFO deductions from Anderson's and Nordlund's accounts. We therefore affirm the superior court's denial of the requested relief.

## III

## Conclusion

¶29 We affirm the superior court and conclude that while RCW 72.09.480(7) does not include a specific mandatory LFO deduction for LWOP inmates, this does not prevent the secretary from disbursing funds from an inmate's personal account based on the authority granted to him or her by the legislature in chapter 72.11 RCW. To hold otherwise would relieve some LWOP inmates of their obligation to pay their court-ordered LFOs, a result that contradicts the legislature's clear intent that all LFOs shall be paid.

MADSEN, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶30 C. JOHNSON, J. (dissenting) — This case presents a simple issue of statutory construction where the majority erroneously ignores and renders meaningless the specific, express controlling statutory provisions. The majority instead construes and rewrites the statutes to find a general power not found in the detailed statutory scheme. The statutes make a clear distinction between inmates serving a sentence of life without parole and those that are not; furthermore, the statutes bifurcate inmate funds into two main categories: (a) wages and gratuities earned by the inmates and (b) funds received by the inmates *in addition to* wages and gratuities. A plain reading of the statutes indicates that when dealing with inmates serving a sentence of life without parole, the Department of Corrections (DOC) has no authority to deduct legal financial obligations (LFOs) from funds that are not wages and gratuities earned by the inmates.

¶31 The statutes specify the authority to deduct certain obligations from different inmate classifications. First, an examination of chapters 72.09 and 72.11 RCW reveals that these statutes provide for payment of LFOs through a system of deductions from two main sources of funds: (1) income earned by inmates as wages and gratuities and (2)

income from other sources, most commonly money sent from friends and family members. The detailed scheme under RCW 72.09.480 (dealing with inmate funds subject to deductions) negates any conclusion of some general discretion under RCW 72.11.020 (dealing with disbursal by the DOC secretary of inmate funds to satisfy LFOs).

¶32 Unlike RCW 72.09.480, RCW 72.11.020 gives considerable discretion to the DOC to vary from statutorily mandated base deductions; but, RCW 72.11.020 specifically requires the DOC to make LFO deductions as stated in RCW 72.09.111(1) (discussed below) and 72.65.050 (dealing with the disposition of earnings) *"without exception."* RCW 72.09.111(1) sets out minimum deductions from inmates' *wages, gratuities, and workers' compensation benefits.* LFO deductions are included in RCW 72.09.111(1) among the minimum deductions from *wages and gratuities.* RCW 72-.09.111(1) does not conflict with the directives of RCW 72-.09.480 for money inmates sentenced to life without parole receive from sources *other than* wages and gratuities. Where the legislature plainly reveals its intent through statutes on two related subjects, the court "will not disturb the Legislature's deliberate choice to treat the two types of [funds] differently." *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology,* 146 Wn.2d 778, 792, 51 P.3d 744 (2002). The majority errs in construing RCW 72.11.020 as an unlimited general grant of authority to the secretary to take money from an inmate's personal account to satisfy LFOs. Majority at 861.

¶33 Second, the plain meaning of the statutes demonstrates legislative intent not to impose LFO deductions from sources other than wage and gratuity earnings if received by inmates sentenced to life without parole. In defining the mandatory deductions from sources other than wage and gratuity earnings, RCW 72.09.480(2) states:

When an inmate, *except as provided in subsection (7) of this section*, receives any funds in addition to his or her wages or gratuities, except settlements or awards resulting from legal action, the additional funds shall be subject to the following

deductions and the priorities established in chapter 72.11 RCW:

(a) Five percent to the public safety and education account for the purpose of crime victims' compensation;

(b) Ten percent to a department personal inmate savings account;

(c) Twenty percent to the department to contribute to the cost of incarceration;

(d) *Twenty percent for payment of legal financial obligations for all inmates who have legal financial obligations owing in any Washington state superior court*; and

(e) *Fifteen percent for any child support owed under a support order.*

(Emphasis added.) The key to this case is provided in the exception, which the majority fails to give any effect or meaning. The legislature chose not to include LFO deductions in subsection (7)—the controlling subsection applicable to inmates sentenced to life without parole:

When an inmate sentenced to life imprisonment without possibility of release or parole, or to death under chapter 10.95 RCW, receives any funds in addition to his or her gratuities, except settlements or awards resulting from legal action, the additional funds shall be subject to: Deductions of five percent to the public safety and education account for the purpose of crime victims' compensation, twenty percent to the department to contribute to the cost of incarceration, and fifteen percent to child support payments.

RCW 72.09.480(7).

¶34 Significant to this case, the exception articulated in RCW 72.09.480(7) provides no authority for the DOC to deduct LFOs from inmates sentenced to life without parole. In dealing with other classes of inmates, the statutes do provide express authority for these deductions as evidenced by the specific language of RCW 72.09.480(2), appearing above, which recognizes different authorizations for inmates *not* serving life without parole. What the statutes create is a different treatment for different classes of

inmates: the express authority is provided for one class of inmates, but not for the other. Exclusion of language from one portion of a statute when the language is included in other parts always indicates intent by the legislature to exclude that language. *See State v. Delgado*, 148 Wn.2d 723, 729, 63 P.3d 792 (2003). While the legislature certainly could amend this statute to grant the specific authority created by the majority, this court should not.

¶35 The majority rewrites the relevant statutory scheme, eliminating the specific statutes adopted that expressly control the facts of this case. The exception in RCW 72.09.480(7) has, in effect, been written out of the law by the majority's conclusion that the secretary possesses general authority. This conclusion ignores the legislative choices expressed in the statutes. The superior court's decision should be reversed.

ALEXANDER, C.J., and SANDERS and CHAMBERS, JJ., concur with C. JOHNSON, J.

Reconsideration denied June 12, 2007.