Honorable Rodney Tom State Senator, 48th District P.O. Box 40448 Olympia, WA 98504-0448
Honorable Roger Goodman State Representative, 45th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Senator Tom and Representative Goodman:
By letter previously acknowledged, you have posed the following questions concerning Laws of 2008, ch. 278 (HB 2791), a statute enacted by the 2008 Legislature. For clarity, we have renumbered and paraphrased your questions as follows:
1. For the purposes of Laws of 2008, ch. 278, § 1(3), does a personwho offers to purchase a distressed home thereby become a "distressedhome consultant"?
 2. For the purposes of Laws of 2008, ch. 278, §§ 2, 3, does a realestate licensee become a "distressed home consultant" if the real estatelicensee [original page 2] contacts the distressed homeowner's lender toarrange a sale in which the homeowner's debt to the lender will bedischarged for the amount of the sale price of the home when the saleprice is less than the homeowner owes on the loan?[1]
 3. For the purposes of Laws of 2008, ch. 278, §§ 2, 3, does a realestate licensee become a "distressed home consultant" by performinglicensed activities in the ordinary course of real estate business onbehalf of a buyer or seller to a real estate transaction whenever theproperty involved is a "distressed home"?
 4. Does Laws of 2008, ch. 278, taken as a whole, impliedly impose onreal estate licensees a duty to inquire, before assisting a party in areal estate transaction, whether the property that is being transferredis a "distressed home"?
 BRIEF ANSWERS
A person does not become a "distressed home consultant" merely by offering to purchase a distressed home. A real estate licensee who contacts a distressed homeowner's lender to arrange a "short sale" of the distressed home may or may not meet the definition of a "distressed home consultant," depending on the scope of what the real estate licensee offers to do. Whether a real estate licensee will become a "distressed home consultant" by performing licensed activities in the ordinary course of real estate business on behalf of a buyer or seller to a real estate transaction depends on the facts of a particular transaction. Laws of 2008, ch. 278 does not directly impose on real estate licensees a duty to inquire, before being involved in a real estate transaction, whether the transaction involves a distressed home, but anyone involved in such a transaction should be aware of the possibility that involvement in such a transaction could bring a person within the definition of "distressed home consultant" or "distressed home buyer."
 ANALYSIS
Background: The 2008 Act
In Laws of 2008, ch. 278, the Legislature significantly expanded a series of laws relating to "equity skimming." RCW 61.34.[2] Equity skimming practices are used to obtain title to a property for the purpose of either taking the equity out of the property or obtaining rents or payments on the property without satisfying the underlying obligations that may exist, such as [original page 3] mortgages and existing liens. The property is eventually foreclosed, and the seller loses his or her equity interest and often remains obligated to pay the outstanding balance on loans obtained by pledging the property as security. RCW61.34.020(1) (as amended by Laws of 2008, ch. 278, § 1(1)). Equity skimming is an unfair or deceptive act or practice and an unfair method of competition in the conduct of trade or commerce in violation of the Consumer Protection Act(CPA). RCW 61.34.040 (as amended by Laws of 2008, ch. 278, § 11). A "pattern of equity skimming" is defined as a felony in RCW 61.34.030.
The 2008 amendments introduce several new terms in the law and are evidently intended to broaden the scope of the previous law to protect against certain property conveyance practices deemed by the Legislature to be contrary to public policy. Here are the definitions that are important to the analysis:
 • A "distressed home" is either a dwelling that is in danger of foreclosure or at risk of loss due to nonpayment of taxes; or a dwelling that is in danger of foreclosure or that is in the process of being foreclosed due to a default under the terms of a mortgage. Laws of 2008, ch. 278, § 1(2);
 • A "distressed homeowner" means an owner of a distressed home. Laws of 2008, ch. 278, § 1(7);
 • A "distressed home purchaser" means any person who acquires an interest in a distressed home under a distressed home conveyance, including persons acting in a joint venture or joint enterprise in a distressed home conveyance. Laws of 2008, ch. 278, § 1(6);
 • A "distressed home conveyance" means a transaction in which a distressed homeowner transfers an interest in a distressed home to a distressed home purchaser, the distressed home purchaser allows the distressed homeowner to occupy the distressed home, and the distressed home purchaser or a person acting in participation with such a purchaser conveys or promises to convey the distressed home to the distressed homeowner, provides the distressed homeowner with an option to purchase the distressed home at a later date, or promises the distressed homeowner an interest in, or a portion of, the proceeds of any resale of the home. Laws of 2008, ch. 278, § 1(5);
 • A "distressed home consultant" means a person who solicits or contacts a distressed homeowner and either offers to perform any of several enumerated services for the distressed homeowner (discussed in more detail below) or systematically contacts owners of property that court records, newspaper advertisements, or other sources demonstrate are in foreclosure or are in danger of foreclosure. Laws of 2008, ch. 278, § 1(3).[3]
[original page 4] The 2008 amendments impose a number of duties and obligations on persons who meet the definition of a "distressed home purchaser" or a "distressed home consultant." Laws of 2008, ch. 278, §§ 2-10. In addition, the 2008 law amends RCW 61.34.040 to expand the CPA to cover the practices described in chapter 278, and expands the remedies recoverable under the CPA for violations of that act. Laws of 2008, ch.278, § 11.[4]
With this background in mind, we turn to your specific questions:
1. For the purposes of Laws of 2008, ch. 278, § 1(3), does a personwho offers to purchase a distressed home thereby become a "distressedhome consultant"?
The 2008 amendments add language about "distressed home consultants" and define the term. As noted earlier, a person can become a "distressed home consultant" in either of two basic ways: (1) soliciting or contacting a distressed homeowner and making a representation or offer to perform certain services; or (2) systematically contacting owners of property that are in foreclosure or in danger of foreclosure. Laws of 2008, ch. 278, § 1(3)(a), (b). For purposes of this analysis and the examples given below, we will assume that subsection 1(3)(b) (systematically contacting owners of property in foreclosure or in danger of foreclosure) does not apply, allowing us to concentrate on the language in subsection 1(3)(a).
Subsection 1(3)(a) can be broken down into the following elements. Under this language, a person is a "distressed home consultant" if the person (1) solicits or contacts a distressed homeowner in writing, in person, or through any electronic or telecommunications medium and (2) makes a representation or offer to perform any service that the person represents (3) will produce one or more of twelve different results listed in the statute:
i. Stop, enjoin, delay, void, set aside, annul, stay, or postpone a foreclosure sale;
ii. Obtain forbearance from any servicer, beneficiary, or mortgagee;
iii. Assist the distressed homeowner to exercise a right of reinstatement provided in the loan documents or to refinance a loan that is in foreclosure or is in danger of foreclosure;
iv. Obtain an extension of the period within which the distressed homeowner may reinstate the distressed homeowner's obligation or extend the deadline to object to a ratification;
[original page 5] v. Obtain a waiver of an acceleration clause contained in any promissory note or contract secured by a mortgage on a distressed home or contained in the mortgage;
vi. Assist the distressed homeowner to obtain a loan or advance of funds;
vii. Save the distressed homeowner's residence from foreclosure;
viii. Avoid or ameliorate the impairment of the distressed homeowner's credit resulting from the recording of a notice of trustee sale, the filing of a petition to foreclose, or the conduct of a foreclosure sale;
ix. Purchase or obtain an option to purchase the distressed homeowner's residence within twenty days of an advertised or docketed foreclosure sale;
x. Arrange for the distressed homeowner to become a lessee or tenant entitled to continue to reside in the distressed homeowner's residence;
xi. Arrange for the distressed homeowner to have an option to repurchase the distressed homeowner's residence; or
xii. Engage in any documentation, grant, conveyance, sale, lease, trust, or gift by which the distressed homeowner clogs the distressed homeowner's equity of redemption in the distressed homeowner's residence[.]"
Laws of 2008, ch. 278, § 1(3)(a).[5] With this list in mind, we consider the following examples:
 Example 1. A, the owner of a distressed home, places a sign on her home offering it for sale. B sees the sign, knocks on the door, and offers to purchase the home for the price shown on the sign. B is unaware that the property is a distressed home and makes no representation or offer to A other than to purchase the property. Furthermore, B says or does nothing that would make him a "distressed home purchaser" (see discussion above).
The question is whether B's offer to purchase the property constitutes a "representation or offer to perform any service" which B represents will produce one or more of the twelve conditions listed above. In our example, we have specifically stated that B makes no representation or offer to A other than to purchase the property. However, B's purchase of the [original page 6] property may well (a) stop a foreclosure sale; (b) obtain forbearance from the mortgagee or other creditors; (c) help the homeowner obtain a waiver of an acceleration clause; (d) save the residence from foreclosure; and (e) avoid or ameliorate the impairment of the distressed homeowner's credit. All of these conditions are set forth in subsection 1(3)(a). In addition, the sale might, under some circumstances, implicate one or more of the other conditions listed.[6]
Since it is often obvious that an offer to purchase a distressed home will resolve or at least improve the homeowner's situation, the relatively broad language of subsection 1(3)(a) conceivably could be read to reach even someone such as B in Example 1 above. However, for several reasons, we think a narrower reading is the correct one. If a court were confronted with this issue, its fundamental objective would be to ascertain and carry out the Legislature's intent. Qwest Corp. v. City ofBellevue, 161 Wn.2d 353, 166 P.3d 667 (2007); Anderson v. State Dep't ofCorrections, 159 Wn.2d 849, 154 P.3d 220 (2007). The meaning of words in a statute is not gleaned from the words alone, but from all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, and the general object that would result from construing the statute in one way or another. Burns v. City of Seattle,161 Wn.2d 129, 164 P.3d 475 (2007).
We note that the language of the statute uses the words "represent" and "representation" not once, but twice. To be a "distressed home consultant," a person must first contact a distressed homeowner and make a representation or offer to perform a service of some kind. Second, the person must represent that the service will accomplish one or more of the conditions listed. Laws of 2008, ch. 278, § 1(3)(a). We do not think an offer to purchase a property, without more, would be described as an offer to perform a service. Turning back to Example 1, it seems unreasonable to construe B's offer to purchase the home as an offer to perform a service for A. Even if the purchase of a property could be construed as a service, an offer to purchase, without more, would not constitute a representation that B will relieve A from her financial distress.
A sale of real property is an arm's length transaction between the seller and the purchaser, and there is ordinarily no fiduciary relationship between these two parties. Fleischman v. Hockett,49 Wn.2d 328, 301 P.2d 166 (1956). If the 2008 amendments were read as imposing a fiduciary relationship whenever a distressed home is sold, with the purchaser required to act for the best interest of the seller and subject to enhanced civil and criminal remedies for failures in this regard, very few people would undertake to purchase such properties. The result would presumably be to force almost all such properties into actual foreclosure — a result quite inconsistent with the evident purposes of the statute.
Furthermore, to treat anyone offering to buy a distressed home as a "distressed home consultant" would frustrate the evident purpose of the 2008 amendments (protecting distressed homeowners from unfair and unscrupulous operators who leave the homeowners worse off than [originalpage 7] they began), because it would impose upon even an innocent and well-meaning purchaser (B in Example 1) the heavy burden of acting as a "distressed home consultant." For example, to be valid, a distressed home consulting transaction must be in writing and must contain certain elements set forth in Laws of 2008, ch. 278, § 2.
Even more significantly, the 2008 amendments provide that a distressed home consultant "has a fiduciary relationship with the distressed homeowner." Laws of 2008, ch. 278, § 3. In addition to other duties imposed on fiduciaries by general law, the distressed home consultant must act in the distressed homeowner's best interest and may not "compromise a distressed homeowner's right or interest in favor of another's right or interest, including a right or interest of the distressed home consultant[.]" Laws of 2008, ch. 278, § 3. The statute also imposes certain disclosure requirements, reasonable care requirements, and accounting requirements on distressed home consultants. Laws of 2008, ch. 278, § 3(2)-(4). Even though purchasing a distressed property will typically serve the purpose of reducing or eliminating the distress, the better reading is that the 2008 amendments require the "distressed home consultant" to make some representation that he or she will perform services on the distressed homeowner's behalf, services specifically represented to relieve the homeowner's financial difficulties. The key issue is whether the possible "distressed home consultant" offers to act on the distressed homeowner's behalf and for the homeowner's benefit. A mere offer to purchase the property, without more, does not satisfy this test.
This interpretation is consistent with the general intent of Laws of 2008, ch. 278. Most of the chapter (including all of the sections under discussion here) is added to RCW 61.34, the chapter relating to equity skimming. Thus, it is evident that the new 2008 language is closely related to the pre-existing statutory protections against unscrupulous practices that deprive homeowners of their equity. The Final Bill Report on H.B. 2791 summarizes its provisions by stating that "[t]he equity skimming laws are expanded to cover distressed home consultants and distressed home conveyances." Final Bill Report on H.B. 2791, 60th Leg., Reg. Sess., at 2 (2008).[7] A bona fide offer to purchase a distressed home is not an act of equity skimming but might have the opposite effect of preserving some or all of the homeowner's equity while avoiding foreclosure.
We turn briefly to discuss condition ix in subsection 1(3)(a), which refers to a person who offers to "[p]urchase or obtain an option to purchase the distressed homeowner's residence within twenty days of an advertised or docketed foreclosure sale[.]" Given the general tenor of the chapter, we think the courts would most likely construe this provision to cover those situations in which a person, first, offers to perform a service for the owner of a distressed property (that is, some type of service to be performed on behalf of the owner). If, in connection [original page 8] with offering to perform a service, the person represents that the service will include arranging for the purchase of the property "within twenty days of an advertised or docketed foreclosure sale," condition ix might well be met and the person would thereby become a "distressed home consultant." The condition would not include, however, an offer to purchase a distressed property without knowledge that the property has been advertised or docketed for a foreclosure sale. Nor do we believe that, without more, an offer to assist a distressed homeowner in the sale of a distressed home would render the offerer a distressed home consultant. Of course, the facts of a particular transaction will be very important in analyzing the extent to which the maker of such an offer might be a "distressed home consultant."
 Example 2. Assume the same facts as in Example 1, except that when B knocks on A's door and offers to purchase her home, A describes in detail her dire financial circumstances and thanks B profusely for helping her out of a difficult situation. B indicates that the offer is still good, without making any further representations. Does this transform B into a "distressed home consultant"?
Again, note that B's comment is not a representation that B will perform services for A's benefit that are intended to satisfy one or more of the conditions listed in the 2008 language. An observer would not conclude that B had undertaken to stand in a "consultant" relationship with A. B has simply offered to purchase A's property. Nothing in the conversation indicates that B offers to move beyond the ordinarily arm's length relationship between a seller and buyer, or that B's offer is to act on A's behalf or for A's benefit.
Example 2 illustrates, however, that in the real world, it may be much more difficult to distinguish between a "mere" purchaser and someone who communicates an offer to perform some service for a distressed homeowner that would justify a court in finding a "distressed home consultant" relationship. The standards would appear to be whether the purchaser offered or represented that he would perform any services on the distressed owner's behalf (by contrast to acts done on the purchaser's own behalf) and, especially, whether these services are represented as intended to improve the homeowner's equity or financial position through dealings with the mortgagee, creditors, or other third parties to achieve one or more of the results set forth in section 1(3)(a).
2. For the purposes of Laws of 2008, ch. 278, §§ 2, 3, does a realestate licensee become a "distressed home consultant" if the real estatelicensee contacts the distressed homeowner's lender to arrange a sale inwhich the homeowner's debt to the lender will be discharged for theamount of the sale price of the home when the sale price is less thanthe homeowner owes on the loan?[8]
Your remaining questions all deal specifically with "real estate licensees," a term not used in the 2008 amendments. For purposes of this analysis, we will use the term to include persons who are licensed under RCW 18.85 either as real estate brokers or real estate [original page 9] salespersons.[9] Question 3 is whether a real estate licensee becomes a "distressed home consultant" by contacting a distressed homeowner's lender to arrange a "short sale" of the property in which the lender consents to accept the proceeds from the sale of the distressed home when the sale price is less than the outstanding balance owed to the lender on the home.
We note initially that real estate licensees are not, as a category, exempted from the "distressed home consultant" definition set forth in Laws of 2008, ch. 278, § 1(3). This is in contrast to other states that do exempt real estate licensees to some extent. See, e.g., Minnesota Statutes Annotated § 325N.01(b)(3) (exempting real estate licensees unless they are engaged in offering services designed to, or purportedly designed to, enable the owner to retain possession of the residence in foreclosure); Nevada Revised Statutes Annotated § 645F.380(3) (exempting real estate licensees acting under authority of their licenses). Thus, a real estate licensee will fall within the definition of a "distressed home consultant" if his or her conduct meets the definitions contained in the Washington statute.
You have built into your question the assumption that the real estate licensee in question will contact the lender for the purpose of arranging a "short sale." Except in the unlikely situation that the real estate licensee makes this contact without any prior discussion with the distressed homeowner, it appears inevitable that the contact will be preceded by some sort of understanding between the homeowner and the real estate licensee. If the real estate licensee communicates to the homeowner an offer to contact the lender to arrange a "short sale," it seems certain that both of them would understand that such an arrangement would have one or more of the following effects: stopping or postponing a foreclosure sale; obtaining forbearance from the mortgagee or another; waiving an acceleration clause; saving the residence from foreclosure; and/or avoiding or ameliorating the impairment of the homeowner's credit. If any of these factors are present, the arrangement between the real estate licensee and the homeowner becomes a "distressed home consulting transaction" and the real estate licensee becomes subject to the 2008 statute's requirements relating to distressed home consultants.[10] As a practical matter, then, it appears likely that anyone (including a real estate licensee) offering to arrange a "short sale" of a distressed home and communicating this fact to the homeowner would meet the definition of a "distressed home consultant." [original page 10]
3. For the purposes of Laws of 2008, ch. 278, §§ 2, 3, does a realestate licensee become a "distressed home consultant" by performinglicensed activities in the ordinary course of real estate business onbehalf of a buyer or seller to a real estate transaction whenever theproperty involved is a "distressed home"?
 4. Does Laws of 2008, ch. 278, taken as a whole, impliedly impose onreal estate licensees a duty to inquire, before assisting a party in areal estate transaction, whether the property that is being transferredis a "distressed home"?
Your last two questions inquire further into the possible legal pitfalls faced by real estate licensees who, in the course of their business, are involved in the sale of a distressed home. We note again that the Washington statute contains no general exception for real estate licensees from the definition of "distressed home consultant." Therefore, when a real estate licensee participates in the sale of a distressed home, it becomes a fact question whether the acts and deeds of the real estate licensee fall within the statutory definition. Because real estate licensees may participate in property sales in a number of different ways, it would require a case-by-case analysis to determine whether, in a particular transaction, a real estate licensee (1) has solicited a distressed homeowner either orally, in writing, or by some electronic medium and (2) has offered to perform a service that (3) the person represents would accomplish any of the 12 results listed in Laws of 2008, ch. 278, § 1(3)(a). The three key elements are communicating with the homeowner, offering to perform a service, and representing that the services will accomplish one or more of the twelve conditions listed in the statute.
Speaking in general terms, a person would become a "distressed home consultant" by offering to perform services which would assist a distressed homeowner in avoiding foreclosure of a distressed home, avoiding or reducing liability on a mortgage or other debt secured by a distressed home, avoiding or reducing impairment of the homeowner's credit, or assisting the homeowner in retaining possession of the home or in exercising some future right to re-purchase or re-occupy the home. It is not difficult to imagine that a real estate licensee assisting in the sale of a distressed home might, by statements made and actions taken, bring himself or herself into the "distressed home consultant" definition.
There is the possibility that a real estate licensee could limit his/her services, and limit the representations made about those services, in such a way as to stay outside the definition. This might be easier for a real estate licensee who acts as an agent of the buyer and avoids offering services to the seller in a distressed home transaction. Possibly, a real estate licensee could perform limited services even for the seller in such a way that it is clear that these services are not intended to render the licensee a "distressed home consultant." We cannot determine exactly where courts might draw the line. It is also difficult for us to make a helpful response to your final question — whether a real estate licensee has a "duty to inquire" whether a property being transferred is a "distressed home" before assisting in the transaction. On the one hand, nothing in the language of Laws of 2008, ch. 278
expressly imposes a "duty to inquire" on any party. The language does not change any person's civil or criminal liability based on whether the person has inquired about the "distressed home" status of a property being transferred. On the [original page 11] other hand, it would certainly be reasonable for anyone participating in a property transfer to be fully informed about the status of the property, and to be fully advised whether making certain representations would trigger the "distressed home consultant" or "distressed home purchaser" language of the 2008 amendments. Some might seek to avoid the situation by not participating in the transaction, some might seek to limit their participation, and others might be prepared to accept their status as consultants or purchasers of distressed homes and take appropriate steps to meet the legal standards set forth in the law.
We trust the foregoing information will be of use to you.
Sincerely,
ROB MCKENNA Attorney General
JAMES K. PHARRIS Deputy Solicitor General
:Wros
:pmd
[1] Such a sale is described in the lending industry as a "short sale."
[2] Laws of 2008, ch. 278 contains 14 sections. Two of these amend current language in RCW 61.34 — section 1 of the 2008 bill amends RCW61.34.020 and section 11 amends RCW 61.34.040. Nine sections of the 2008 bill (sections 2 through 10) will be codified as new sections of RCW 61.34. Sections 12 and 13 of the 2008 bill are amendments to RCW 59.18, the Residential Landlord Tenant Act. Section 14, consisting of codification instructions, is itself uncodified.
[3] The definitions given are paraphrased here to provide background for discussion. The full definitions, and definitions of a number of related terms, are set forth in the statute. RCW 61.34.020 (as amended by Laws of 2008, ch. 278, § 1).
[4] The 2008 bill also includes provisions amending the Residential Landlord Tenant Act, RCW 59.18, and imposes certain conditions on unlawful detainer actions involving property that is a distressed home. Laws of 2008, ch. 278, §§ 12, 13. These sections will not be further discussed in this opinion, because they appear to be beyond the scope of your question.
[5] The statute exempts certain categories from the definition of "distressed home consultant": a financial institution; a nonprofit credit counseling service; a licensed attorney; a person subject to RCW 19.148 (a series of statutes relating to mortgage loan servicing); or a mortgage broker under certain circumstances described in the statute. Laws of 2008, ch. 278, § 1(3).
[6] Note the specific discussion below of condition ix in subsection 1(3)(a), referring to a person who offers to "[p]urchase or obtain an option to purchase the distressed homeowner's residence within twenty days of an advertised or docketed foreclosure sale[.]"
[7] There is no legislative history specifically discussing the "distressed home consultant" provisions of H.B. 2791, because these provisions were not contained in the bill as originally introduced. The original bill included only the provisions relating to "distressed home purchasers." The "distressed home consultant" language was added as a Senate floor amendment on March 11, 2008, and the House concurred in the amendment on March 12, 2008. The additional language appears to have been modeled on similar language in the laws of other states. For instance, Laws of 2008, ch. 278, § 1(3)'s definition of "distressed home consultant" is very similar to the definition of "foreclosure consultant" found in the Maryland Code Annotated, § 7-301(c).
[8] We assume, for purposes of analysis, that the property in question is a "distressed home" as defined in the 2008 amendments.
[9] A real estate broker "(a) Sells or offers for sale, lists or offers to list, buys or offers to buy real estate or business opportunities, or any interest therein, for others; (b) Negotiates or offers to negotiate, either directly or indirectly, the purchase, sale, exchange, lease, or rental of real estate or business opportunities, or any interest therein, for others; (c) Negotiates or offers to negotiate, either directly or indirectly, the purchase, sale, lease, or exchange of a manufactured or mobile home in conjunction with the purchase, sale, exchange, rental, or lease of the land upon which the manufactured or mobile home is, or will be, located; (d) Advertises or holds himself or herself out to the public by any oral or printed solicitation or representation that he or she is so engaged; or (e) Engages, directs, or assists in procuring prospects or in negotiating or closing any transaction which results or is calculated to result in any of these acts[.]" RCW 18.85.010(1). A real estate salesperson means "any natural person employed, either directly or indirectly, by a real estate broker, or any person who represents a real estate broker in the performance of any of the acts specified in the subsection (1) of this section[.]" RCW 18.85.010(2).
[10] In this connection, it is important to note that the 2008 bill prohibits any attempt to induce a distressed homeowner to waive rights under the chapter and makes waivers void and unenforceable. Laws of 2008, ch. 278, § 4.